UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
DUANE HINES,

                        Plaintiff,

            -against-

EXPERIAN  INFORMATION  SOLUTIONS,
INC., *et al.*,

                        Defendants.
--------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
24 CV 4641 (OEM) (CLP)

**POLLAK**, United States Magistrate Judge:

On July 2, 2024, plaintiff Duane Hines, proceeding *pro se*, commenced this action against

defendants Portfolio Recovery Associates, LLC ("Portfolio"), and Experian Information

Solutions, Inc. ("Experian"), alleging violations of the Fair Credit Reporting Act ("FCRA"), 15

U.S.C. §§ 1681 *et seq.*, the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et

seq.*, New York General Business Law §§ 349 *et seq.*, and New York state law negligence and

unjust enrichment.  (Compl.[1] ¶ 1).

On July 2, 2024, plaintiff Duane Hines, proceeding *pro se*, commenced this action against

Currently pending before this Court are several motions:  1) plaintiff's January 29, 2025

letter motion for Rule 11 sanctions against defendant Experian (ECF No. 22); 2) plaintiff's letter

motion to compel defendant Portfolio to Produce Documents (ECF No. 38); 3) plaintiff's letter

motion asking the court to recognize the Consumer Financial Protection Bureau ("CFPB") as an

interested party (ECF No. 54); and 4) plaintiff's letter motions requesting that the court take

judicial notice of "a recent Order relevant to the issues" alleged in the Complaint (ECF No. 55),

and Portfolio's "Pattern of Misconduct" (ECF No. 58).  Each motion is addressed below.

---

[1] Citations to "Compl." refer to plaintiff's Complaint filed July 2, 2024 (ECF No. 1).

FACTUAL BACKGROUND

Plaintiff's Complaint alleges that he incurred an alleged debt with Synchrony Bank that was primarily for personal, family or household purposes as defined by the FDCPA. (Compl. ¶ 3). According to plaintiff, he could not pay the debt due to his financial circumstances, and the debt went into default. (Id. ¶ 4). Plaintiff alleges that at no time has he owed any debt to defendant Portfolio, nor did he hold any accounts or personal credit accounts with Portfolio, and Portfolio had no authorization from either plaintiff or a court to access his consumer credit report from defendant Experian or any other credit reporting agency. (Id. ¶¶ 15-20).

Plaintiff alleges that he filed a complaint against defendant Portfolio with the CFPB. (Id. ¶ 21). Plaintiff alleges that defendant Portfolio's response to the CFPB complaint revealed that Portfolio, on August 2, 2023, sent an initial debt collection letter addressed to plaintiff's ex-wife's residence, which plaintiff never received. (Id.) Plaintiff alleges that defendant Portfolio did this to embarrass and humiliate him and induce him into paying them money. (Id.) Plaintiff alleges that these actions constitute a violation of the FDCPA. (Id.)

On or around November 2, 2023, plaintiff received a letter from Portfolio, dated October 17, 2023, that stated that it was an attempt to collect a debt. (Id. ¶ 22). Plaintiff claims that the letter, which provided various options to pay the debt, was the first communication he received from defendant Portfolio. (Id.) On November 7, 2023, plaintiff sent an email to defendant Portfolio, disputing Portfolio's right to collect any debt and asking for proof of their ownership of the debt, including whether ownership was based on an assignment contract from the original creditor, a bill of sale, or forward flow agreement. (Id. ¶ 23).

Thereafter, plaintiff pulled his credit reports and noted that this account had been listed by Portfolio on plaintiff's Experian consumer credit report on October 31, 2023. (Id. ¶ 24)

Plaintiff alleges that Portfolio "re-aged" the opening date of the original creditor's account from June 23, 2019, to July 16, 2023. (Id.) Portfolio also indicated on plaintiff's consumer report that it had completed a FCRA investigation on November 8, 2023, and that plaintiff disputed or "disagreed" with that investigation. (Id.) Plaintiff complains that this statement on his consumer report was false because he had no contact with Portfolio after he emailed his dispute email on November 7, 2023. (Id.) Therefore, plaintiff alleges that this statement was made in violation of the FDCPA. (Id.)

Plaintiff alleges that he received another letter from Portfolio dated November 9, 2023, informing him that he could dispute the debt again. (Id. ¶ 25) Plaintiff found this letter confusing because he had already disputed the debt just two days earlier in his November 7, 2023 email. (Id.) On November 12, 2023, plaintiff pulled his consumer credit report again from defendant Experian and noticed that defendant Portfolio had accessed his personal consumer credit report without his authorization and without a court order on November 11, 2023. (Id. ¶ 26). Since Portfolio had stated in the November 9, 2023 letter that it was not attempting to collect a debt, plaintiff asserts that defendant Experian had a duty to verify that defendant Portfolio had a permissible purpose before allowing it to access plaintiff's consumer credit report. (Id.) Again, plaintiff alleges that this constituted a violation of the FCRA. (Id.)

Plaintiff filed a complaint with the CFPB on November 24, 2023, regarding Portfolio's violations of the FDCPA and FCRA. (Id. ¶ 27) Plaintiff alleges that Portfolio's response, apart from stating that it was not attempting to collect a debt, did not provide any proof of ownership of the original Synchrony Bank debt except for a letter dated July 29, 2023, that plaintiff claims was fraudulent and misleading. (Id.; Compl. Ex. B).

On December 4, 2023, plaintiff sent Experian a letter disputing the false account listing from Portfolio, and Experian responded on December 13, 2023. (Id. ¶ 28). Plaintiff alleges that it appears as if Experian "did no investigation whatsoever" and/or "attempted to conceal their findings." (Id.) When plaintiff pulled his Experian report on June 30, 2024, he noticed that Portfolio had pulled his report multiple times on November 11, 2023, December 28, 2023, February 29, 2024, March 3, 2024, May 29, 2024, and June 26, 2024, without authorization and even though Portfolio had represented to plaintiff and to the CFPB that it was not collecting a debt. (Id. ¶ 29).

Plaintiff claims Portfolio violated the FDCPA by providing false information in connection with plaintiff's credit report and by communicating credit information known to be false, as well as by using false representations or deceptive means to collect a debt, in violation of 15 U.S.C. §§ 1692e(8), and (10) (First Cause of Action). (Id. ¶¶ 31-38). Plaintiff also brings FCRA claims against Portfolio for supplying false information to Experian, for failing to conduct an investigation of inaccurate information which plaintiff disputed, and by failing to comply with the requirements imposed on furnishers of information, in violation of 15 U.S.C. §§ 1681s-2(b) (Second Cause of Action). (Id. ¶¶ 39-48). Plaintiff's Third Cause of Action alleges violations of FCRA by Experian, including disseminating plaintiff's consumer credit reports to third parties and to Portfolio without authorization or a court order. (Id. ¶¶ 49-60). Finally, the Fourth, Fifth and Sixth Causes of Action brought against both defendants allege claims of unjust enrichment, negligence per se, and violations of New York General Business Law § 349. (Id. ¶¶ 61-92).

## PROCEDURAL BACKGROUND

On January 29, 2025, plaintiff filed a letter motion seeking sanctions under Rule 11 of the Federal Rules of Civil Procedure, arguing that Experian made misrepresentations to the Court by

claiming that it had conducted a reasonable reinvestigation of plaintiff's dispute of the Portfolio account.  (ECF No. 22).  The letter motion also highlights allegedly contradictory admissions and evidence revealed during discovery.  (Id.)  In response, defendant Experian submitted a letter in opposition dated February 6, 2025, asserting that it made no misrepresentations in asserting a legal defense of reasonable reinvestigation and that plaintiff is attempting to litigate the merits of the case through his sanctions motion.[2]  (ECF No. 24).

While the sanctions motion against Experian was pending, plaintiff filed a motion on February 27, 2025, seeking to compel defendant Portfolio to produce the full chain of title, purchase agreement, and forward flow agreement relating to Portfolio's acquisition of the Synchrony Bank debt.  (ECF No. 38).  In its opposition, Portfolio claims that it has already produced documents responsive to plaintiff's request for chain of title documents, documents identifying the scope of Synchrony's sale of plaintiff's debt to Portfolio, and a copy of Portfolio's notes for plaintiff's account.  (ECF No. 43).  Finally, Portfolio argues that plaintiff's request for a "Forward Flow Agreement" is irrelevant to establishing plaintiff's claims in this action.  (Id.)

On May 8, 2025, plaintiff submitted a third letter motion asking the court to recognize the Consumer Financial Protection Bureau ("CFPB") as an interested party in this action.  (ECF No. 54).  That same day, plaintiff submitted a fourth letter of supplemental authority, requesting that the court take judicial notice of an order issued in Consumer Financial Protection Bureau v. Experian Information Solutions, Inc., No. 8:25 CV 00024 (C.D. Cal. May 5, 2025).  (ECF No. 55).

---

[2] Following the filing of plaintiff's reply letter, defendant Experian filed a letter requesting permission to file a sur-reply, noting that plaintiff raised several issues in his reply letter (ECF No. 26) that were not included in his initial letter motion.  (See ECF No. 30).  Defendant Experian included its proposed sur-reply as an Exhibit to the letter.  (ECF No. 30-1).  Upon review of plaintiff's reply letter, the Court grants defendant's motion to file a sur-reply and has considered the arguments raised therein.

Plaintiff's most recent motion, filed on July 22, 2025, asks the Court to take judicial notice of the judgment and findings issued in <u>Portfolio v. Mejia</u>, No. 1216 CV 34184, a Missouri state court case where the court criticized the business practices of defendant Portfolio. (ECF No. 58; ECF No. 58 Ex. A).

Each motion is addressed below.

<u>DISCUSSION</u>

I.    <u>Plaintiff's Rule 11 Motion For Sanctions Against Experian</u>

On January 29, 2025, plaintiff submitted a letter motion seeking sanctions against defendant Experian, pursuant to Federal Rule of Civil Procedure 11, for false and misleading representations to the Court and to plaintiff. (ECF No. 22). Plaintiff seeks sanctions in the form of an order striking Experian's letter motion to vacate the clerk's entry of default entered against it, striking Experian's Answer to the Complaint, and awarding plaintiff reasonable expenses, which includes costs incurred in addressing these alleged misrepresentations. (<u>Id.</u>)

A.    <u>Rule 11 Sanctions</u>

Rule 11 of the Federal Rules of Civil Procedure authorizes a court to sanction an attorney or unrepresented party for deviating from the requirements of the Rule. Fed. R. Civ. P. 11(c). Although unrepresented plaintiffs may be held to a lower standard than counseled parties when bringing allegations, <u>see, e.g.</u>, <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972), plaintiff's *pro se* status does not exempt him from the requirements of Rule 11 to show some set of facts that can support his claim and the court's inherent discretion in deciding whether sanctions are appropriate.

In the Second Circuit, it is well established that "the decision whether to impose sanctions is not mandatory, but rather is a matter for the court's discretion." <u>Lorber v. Winston</u>,

993 F. Supp. 2d 250, 253 (E.D.N.Y. 2014) (citing <u>Perez v. Posse Comitatus</u>, 373 F.3d 321, 325 (2d Cir. 2004)).  The Second Circuit has held that orders granting Rule 11 sanctions should be "made with restraint and discretion."  <u>Schlaifer Nance & Co. v. Estate of Warhol</u>, 194 F.3d 323, 334 (2d Cir. 1999).

Federal Rule of Civil Procedure 11 focuses on preventing specific enumerated types of misconduct by litigants or their counsel.  Under Rule 11(b), an attorney or litigant who presents "a pleading, written motion, or other paper" to the court certifies that a reasonable inquiry was performed under the circumstances, and "that to the best of the [attorney's] knowledge, information, and belief," the pleading:

> (1) . . . is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or . . . are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  The Supreme Court has held that Rule 11's central purpose "is to deter baseless filings in district court and . . . streamline the administration and procedure of the federal courts."  <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 393 (1990).  Thus, Rule 11 imposes a duty on attorneys and litigants "to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose."  (<u>Id.</u>) (quotation marks omitted). In light of the relatively narrow scope of Rule 11, sanctions should be "limited to what is sufficient to deter repetition of [improper] conduct."  <u>Margo v. Weiss</u>, 213 F.3d 55, 64 (2d Cir. 2000) (citing Fed. R. Civ. P. 11(c) (quotation marks omitted)).

7

Since the attorney's "inquiry must be 'reasonable under the circumstances,' liability for Rule 11 violations requires only a showing of objective unreasonableness on the part of the [individual] . . . signing the papers." In re Australia and New Zealand Banking Grp. Ltd. Sec. Litig., 712 F. Supp. 2d 255, 263 (S.D.N.Y. 2010) (quoting ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 579 F.3d 143, 150 (2d Cir. 2009); see also Lorber v. Winston, 993 F. Supp. at 252 (noting that in general, "the standard for triggering the award of fees under Rule 11 is objective unreasonableness" (quoting Margo v. Weiss, 213 F.3d at 65)). This inquiry is "not based on the subjective beliefs of the person making the statement." Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 387 (2d Cir. 2003).

Whether sanctions under Rule 11 are appropriate is "distinct from the underlying merits of a claim." East Gluck Corp. v. Rothenhaus, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (citing Abdelhamid v. Altria Group, Inc., 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007) (holding that "[w]hen divining the point at which an argument turns from merely losing to losing and sanctionable[,] courts must resolve all doubts in favor of the signer of the pleading" (internal citations and quotation marks omitted))); see also Securities Indus. Ass'n v. Clarke, 898 F.2d 318, 321 (2d Cir. 1990) (observing that a "distinction must be drawn between a position which is merely losing, and one which is both losing and sanctionable"). Further, the Advisory Committee Notes to Rule 11 provide that a Rule 11 motion should not be used "to test the legal sufficiency or efficacy of allegations in the pleadings," since "other motions are available for those purposes." See East Gluck Corp. v. Rothenhaus, 252 F.R.D. at 179 (quoting Fed. R. Civ. P. 11 Advisory Committee Note to the 1993 Amendments). Thus, "not all unsuccessful legal arguments are frivolous or warrant sanction." Mareno v. Rowe, 910 F.2d 1043, 1047 (2d Cir. 1990).

8

B.  The Parties' Arguments

Plaintiff argues that Experian's motion to vacate (ECF No. 14) falsely represented that it conducted a reasonable reinvestigation of plaintiff's dispute regarding the Portfolio account. (ECF No. 22 at 1).  Plaintiff seeks sanctions under Rule 11, arguing that Experian's representation that it had conducted a reasonable reinvestigation was contradicted by Experian's later admission in response to discovery requests that it had not forwarded plaintiff's dispute to Portfolio.  (Id. at 2).  Citing the FCRA's requirement that a consumer reporting agency must forward a dispute to the furnisher of information within five days of receipt as part of any reasonable reinvestigation, plaintiff argues that defendant Experian's admission that it did not send plaintiff's dispute to defendant Portfolio demonstrates that Experian violated the FCRA. (Id.)

Plaintiff additionally argues that sanctions are warranted because Experian's admissions in this action contradict representations it made before the CFPB when responding to plaintiff's CFPB complaint.  According to plaintiff, Experian allegedly represented that it had conducted a reinvestigation, that it had contacted Portfolio, and that Portfolio had verified the accuracy of the account.  (Id. at 1).  Plaintiff seeks sanctions based on these representations because they are allegedly contradicted by certain statements and facts set forth in various documents revealed in discovery that indicate that Experian did not forward plaintiff's dispute to Portfolio.  (Id. at 3).

In opposing plaintiff's motion, Experian argues that plaintiff's sanctions motion improperly addresses the underlying merits of the action.  (ECF No. 24 at 2).  Nevertheless, Experian asserts that in seeking to vacate the default by presenting a "meritorious defense" against plaintiff's claims, Experian did not make any misrepresentations as to whether it had conducted a reasonable reinvestigation of plaintiff's dispute.  (ECF No. 24 at 1).  Summarizing

the merits question in dispute, Experian states that its legal defense that it conducted a reasonable investigation is fully consistent with not forwarding plaintiff's disputes to Portfolio. (ECF No. 24 at 2). Experian argues that to the extent that its later statement undercuts its claims that it performed a reasonable investigation is a question as to the merits of the action—and not the basis for a Rule 11 motion for sanctions.[3] (Id. at 2).

With respect to plaintiff's arguments that Experian made false statements to the court relating to its communications with the CFPB, Experian notes that plaintiff's CFPB dispute letter only alleged that Portfolio did not have permission to access plaintiff's credit report, and did not touch on Experian's reinvestigation responsibilities. (Id. at 3). Indeed, Experian notes that even though it was not the subject of plaintiff's letter, Experian conducted a reinvestigation of the Portfolio account and again found that the account was not reported on plaintiff's consumer report. (Id.) Experian concedes that while its response to the CFPB complaint may have contained inaccuracies and generalizations, its response to the agency is not subject to Rule 11.

In his reply letter dated February 10, 2025, plaintiff again argues that Experian made sanctionable misrepresentations and cites statements defendant Experian made to the CFPB, in which Experian falsely stated that it had forwarded plaintiff's dispute to Portfolio. (ECF No. 26 at 3). Plaintiff also argues that the inconsistencies in documentary evidence produced during discovery not only challenge Experian's narrative of how they handled plaintiff's dispute, but

---

[3] Specifically, Experian asserts that it received a letter from plaintiff disputing the Portfolio account on or around December 11, 2023. (ECF No. 24 at 2). Experian claims that at that time, the Portfolio account was not reporting on plaintiff's file. (Id.) In response, Experian sent a letter on December 12, 2023, stating that it had completed it reinvestigation, and that "'DISPUTED ITEM [WAS] NOT LISTED ON [HIS] CREDIT REPORT.'" (Id. (emphasis in original)). Experian cites case authority where courts have held that there was no violation of FCRA when a consumer reporting agency did not forward a dispute for an account that was "not reporting" the disputed information. (Id. at 3 (citing Okocha v. Trans Union LLC, No. 08 CV 3107, 2011 WL 2837594, at *4 (E.D.N.Y. Mar. 31, 2011), aff'd, 488 F. App'x 535 (2d Cir. 2012))).

also constitute a sanctionable offense of allegedly creating fabricated documents "for the purpose of attempting to defend the motion for sanctions." (Id. at 2).

Plaintiff then raises two new arguments. First, plaintiff argues that defendant Experian's litigation conduct in filing plaintiff's consumer credit report on the court docket breached the confidentiality agreement signed by the parties. (Id. at 1). Plaintiff argues that this filing constitutes another violation of FCRA in support of his argument for sanctions. (Id.) Second, plaintiff argues that Experian may be in violation of 15 U.S.C. 1681i(a)(5)(B)(ii) for reinserting the Portfolio account into plaintiff's record without informing plaintiff of the reinsertion. (ECF No. 26 at 2). This provision of FCRA provides that if any information that has been deleted from a consumer's file is then reinserted, the reporting agency shall notify the consumer in writing not later than five business days following the reinsertion. (Id. at 2-3). Plaintiff claims that this reinsertion follows defendant Experian's practice of "manipulat[ing] what information they place on and off consumer reports at will and without reason." (Id. at 2).

In its sur-reply letter, Experian responds to the new arguments raised in plaintiff's reply letter. (ECF No. 30-1). First, Experian argues that, contrary to plaintiff's claim, it produced the dispute results without confidentiality designations, and that the documents themselves do not contain overtly sensitive materials. (Id. at 1). Second, Experian argues that the exhibits that plaintiff characterizes as "fabricated" are in fact legitimate, and were timely produced during discovery as demonstrated by their associated Bates Numbers. (Id.) Finally, Experian asserts that the Portfolio account was never deleted as a result of a reinvestigation and thus, Section 1681i(a)(5)(B)(ii) does not apply. (Id.) Instead, defendant Experian maintains that no notice requirement could be triggered because the Portfolio account was not appearing at all at the time of the December 2023 reinvestigation. (Id. at 2).

C.  Analysis

As noted *supra*, Rule 11 focuses on the conduct of the lawyer signing the pleading and is evaluated according to a standard of objective reasonableness.  See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 579 F.3d at 150.  By signing the pleading, the lawyer is certifying that there has been a reasonable inquiry into the facts and law; that the pleading is not being used for an improper purpose (such as harassment); that the claims and defenses and legal contentions are warranted by existing law or supported by nonfrivolous arguments for an extension of existing law; and that the allegations have or are likely to have evidentiary support.  Fed. R. Civ. P. 11; see Cooter & Gell v. Hartmarx Corp., 496 U.S. at 393.  Rule 11, by its terms, is inapplicable to disclosures and discovery responses, or motions and responses brought under Rules 26 through 37.  Fed. R. Civ. P. 11(d).

As a preliminary matter, Rule 11(c)(2) provides a "safe harbor" provision to allow parties opposing a Rule 11 sanctions motion to correct or withdraw challenged pleadings.  Thus, a separate motion describing the specific conduct alleged to have violated the rule must be served on the opposing party before it is filed with the court.  Fed. R. Civ. P. 11(c)(2).  After service of the notice, the target of the Rule 11 motion has 21 days to withdraw or correct the pleading.  (Id.) Motions that fail to comply with the safe harbor provision have been denied outright.  See, e.g., Perpetual Secs., Inc. v. Tang, 290 F.3d 132, 142 (2d Cir 2002) (vacating sanctions award for failure to satisfy safe harbor provision); Photocircuits Corp. v. Marathon Agents, Inc., 162 F.R.D. 449, 452 (E.D.N.Y. 1995) (rejecting party's argument that it could circumvent the safe harbor requirement by the court's grant of leave to file motion for sanctions).  Neither party here has raised the safe harbor provision, and it is unclear whether plaintiff served defendant Experian with a separate notice that he intended to file a Rule 11 motion for sanctions.  While the Court

could deny the motion based on its noncompliance with Rule 11's safe harbor provision, the motion is without merit for other reasons.

As noted, the crux of plaintiff's complaint against Experian is that it failed to comply with the requirements of the FCRA to conduct a reasonable reinvestigation of plaintiff's dispute with Portfolio and that it allowed Portfolio to access plaintiff's account without the requisite authority. Plaintiff contends that Rule 11 sanctions are warranted because Experian made misrepresentations in its motion to vacate when it claimed that it had meritorious defenses to the claims, including that it had conducted a reasonable reinvestigation of plaintiff's dispute. Plaintiff's argument that this was a misrepresentation to the court is not only based upon facts at dispute in this litigation, but also contested legal requirements of the FCRA. Specifically, plaintiff argues that Experian could not have performed a reasonable reinvestigation given Experian's concession that it did not notify Portfolio of the dispute. (ECF No. 22 at 2). In response, Experian has explained that because the Portfolio account was not listed on plaintiff's consumer report at the time Experian received the dispute, it was not required by law to report the dispute to Portfolio. (ECF No. 24 at 2-3). Plaintiff challenges Experian's explanation, relying on the timing of the dispute letters, plaintiff's observations of the account on his report, and various alleged discrepancies in Experian's statements regarding the reinvestigation. (ECF No. 22).

As noted, the question of whether sanctions are appropriate under Rule 11 is an inquiry separate and distinct from a resolution of the underlying merits of a claim. East Gluck Corp. v. Rothenhaus, 252 F.R.D. at 179. What Experian did, and when—including whether the account was or was not listed on plaintiff's credit report at a time when Experian was required to notify Portfolio about the dispute—are disputed issues of fact that go to the merits of plaintiff's claim.

Moreover, because the FCRA does not define what constitutes a "reasonable reinvestigation," whether the steps taken by the reporting agency were legally reasonable or not may depend on the circumstances surrounding the dispute.  See Perez v. Experian, No. 20 CV 9119, 2021 WL 4784280, at *9 (S.D.N.Y. Oct. 14, 2021), report and recommendation adopted, No. 20 CV 9119, 2021 WL 5088036 (S.D.N.Y. Nov. 2, 2021).  Therefore, it is inappropriate to decide these questions of fact and law in connection with the instant motion because they require merits-based inquiries to be determined once discovery is complete.  Whether defendant Experian's conduct constituted a "reasonable reinvestigation," and how allegedly contradictory statements affect a finding of reasonableness, is not a proper basis to impose Rule 11 sanctions.

With respect to plaintiff's claim that Experian's response to the CFPB dispute letter contained misrepresentations, representations to an agency independent of this court do not fall within the scope of Rule 11.  While the alleged misrepresentations may be relevant to assessing defendant's credibility or to the arguments addressed above, these are issues that go to the merits of the claims.  Therefore, there is no basis upon which to impose Rule 11 sanctions based on Experian's representations before the CFPB.

Accordingly, the Court respectfully recommends that plaintiff's motion for Rule 11 sanctions against Experian be denied.

D.  Plaintiff's Other Arguments

The Court notes that plaintiff's reply letter (ECF No. 26) raises additional arguments which are not relevant to the Rule 11 motion at hand, but which the Court addresses below.

1)  Breach of the Confidentiality Agreement

First, plaintiff complains that Experian willfully breached the January 9, 2025 confidentiality agreement, which was "entered on the court docket on February 7, 2025," by

14

filing on the public docket plaintiff's "full unredacted consumer credit report." (Id. at 1).  As a preliminary matter, the Court denied the proposed protective order filed by parties and instructed that a party seeking to file confidential materials or seal confidential material filed by the other party shall make an application to the Court.  (See ECF No. 29).  Indeed, this was exactly the course taken regarding plaintiff's consumer credit reports, which were filed as exhibits to defendant Experian's opposition letter.  (See ECF Nos. 24-1, 24-2).  On February 10, 2025, plaintiff notified the Court that Experian had publicly filed what appeared to be copies of his unredacted credit report and asked the Court to order those exhibits to be sealed.  (See ECF No. 27).  Plaintiff argued that "[t]he public disclosure of these documents poses a serious risk of harm, including but not limited to identity theft and financial fraud, due to the exposure of sensitive personal information."  (Id.)  The Court granted plaintiff's request and ordered defendant Experian to remove the documents and to re-file them under seal.  (ECF No. 28).

In its sur-reply letter dated February 13, 2025, defendant Experian disputes that it breached the confidentiality agreement, noting that it had produced the documents to plaintiff without a confidentiality agreement and that plaintiff did not register any objections to the production in that form.  (ECF No. 30-1).  Moreover, Experian contends that the documents were redacted to indicate only parts of account numbers and did not reveal any personal identifying information except plaintiff's address which is already listed on the docket.  (Id.)

Given that plaintiff's February 10, 2025 letter motion to seal was granted, this specific issue is now moot.  However, all litigants are admonished to use care in filing potentially sensitive personal information on the public docket.  Moreover, regardless of whether the filing was, as plaintiff claims, "a deliberate effort" to "embarrass, humiliate, harass" and retaliate

against plaintiff or simply an error, the issue does not inform the Court on the instant motion for Rule 11 sanctions.  (ECF No. 26 at 1).

2)  Alleged Non-disclosure of Certain Documents

Similarly, plaintiff's reply complains that documents attached as exhibits to Experian's letter response had not previously been provided to him during discovery.  (ECF No. 26 at 2). He contends that he never received the document titled "dispute results," dated December 12, 2023, and February 3, 2024, and instead received an email from Experian, also titled "dispute results," dated December 13, 2023, which he attached to the Complaint.  (Id. (citing Ex. A to Complaint)).  He questions why there would be two different dispute results sent one day apart and suggests that these documents may be "a misrepresentation that Experian created for the purpose of attempting to defend the motion for sanctions."  (Id.)  Apart from this concern, plaintiff also argues that the two documents produced in response to the motion "also contain numerous incorrect information."  (Id.)  In response, defendant disputes that the documents were fabricated for purposes of the motion and notes that they were in fact previously provided to plaintiff as demonstrated by the Bates Numbers on the exhibits.  (ECF No. 30-1 at 1).

While plaintiff may raise questions in pretrial motions about whether Experian failed to provide these documents to him, and substantive concerns about the content of these documents and their relationship to other documents that had been produced or cited earlier, these issues are not properly addressed under Rule 11.

II.    Plaintiff's Motion to Compel Documents from Defendant Portfolio

On February 27, 2025, plaintiff filed a letter motion under Fed. R. Civ. P. 37(a) seeking an order to compel defendant Portfolio "to produce the full and complete unredacted chain of title, purchase agreement, and forward flow agreement related to its alleged acquisition of the

16

Synchrony Bank debt. . . ."  (ECF No. 38 at 1).  Plaintiff has requested the chain of title documents to determine whether the debt was lawfully assigned to Portfolio, and whether the individual who signed over the debt was authorized to do so.  (Id.)  Plaintiff requests the Purchase and Forward Flow Agreements to determine "the accuracy and completeness of the origination details and alleged outstanding balance of the debt," and the "[s]cope of the Alleged Assignment."  (Id.)  Finally, plaintiff seeks an unredacted version of a discovery document emailed to plaintiff by defendant Portfolio on February 7, 2025, to determine why Portfolio ceased collection efforts and closed the account after plaintiff filed this lawsuit.  (Id. at 2).  Plaintiff argues that these documents are necessary to determine the validity of Portfolio's claimed ownership and authority to collect the debt, its authority to furnish information to consumer reporting agencies, including the right to access plaintiff's consumer credit report, and the extent of Portfolio's permissible activities under FCRA.  (Id.)

In response, defendant Portfolio filed a letter dated March 11, 2025, stating that it has already made three productions that include documents responsive to plaintiff's request for chain of title documents, documents identifying the scope of Synchrony Bank's sale of plaintiff's debt, and an unredacted copy of Portfolio's notes relating to plaintiff's account.  (ECF No. 43 at 1).  Among the documents Portfolio claims to have provided are the cardmember agreement that governed the delinquent Synchrony account, monthly billing statements, a sale notification letter from Synchrony indicating that the account was sold to Portfolio, load data for the account at the time of sale, and various other communications between plaintiff and Portfolio.  (Id. at 1-2).  According to Portfolio, it made an additional production of documents when it filed its March 11, 2025 letter response to plaintiff's motion to compel.  (Id. at 2).  This production included the bill of sale and an affidavit from Synchrony Bank attesting to the sale of all its interests in

plaintiff's account to Portfolio.  (Id.)  Indeed, Portfolio argues that it has already produced documents that establish the chain of title to plaintiff's account.  (Id.)  Finally, Portfolio represents that it produced Portfolio's call history and confidential account notes.  (Id.)  While plaintiff objected to the one redaction in the account notes, which Portfolio made based on attorney-client privilege, Portfolio now indicates that they are willing to provide an unredacted version of this document.  (Id. at 2.)  Thus, plaintiff's motion to compel with respect to the account notes is now moot, and Portfolio is ordered to produce it.

In his reply letter dated March 12, 2025, plaintiff raised concerns related to the documents produced by defendant Portfolio when it filed its response letter.  (ECF No. 44 at 1).  First, he notes that the bill of sale from Synchrony Bank was dated August 5, 2022, but was "signed without a notary on July 31, 2023 and stated that it was without recourse."  (Id.) (emphasis removed).  Plaintiff also complains that the affirmation relating to the sale of the account was signed and dated May 7, 2025 by an "employee" who stated that the sale occurred on July 16, 2023.  (Id.)  Plaintiff argues that the inconsistencies in the sale dates on the Bill of Sale and the delay in signing "may raise concerns regarding the legitimacy of the transaction," and "may imply that the document was altered or executed at a different time than intended." (Id.)  Plaintiff argues that Portfolio is required to provide the complete set of documents tracing the ownership of the debt, including all assignments and endorsements.  (Id. at 2.)  Plaintiff also seeks the Purchase Agreement which would contain representations from Synchrony Bank regarding the accuracy of the account.  (Id.)  Citing a stipulated judgment and order that defendant Portfolio entered into in another action, plaintiff asks the Court to impose sanctions on Portfolio for its failure to comply with plaintiff's discovery requests.  (Id.)

Defendant Portfolio responds that, in addition to producing the "sale notification letter from Synchrony to Plaintiff where Synchrony expressly states that Plaintiff's account was sold to PRA," it produced other documents which establish the "chain of title" to plaintiff's account. (ECF No. 43 at 2). Citing a stipulated judgment and order in another district court action, plaintiff's reply to Portfolio essentially argues that any production regarding chain of title is insufficient if it does not produce "the complete set of documents tracing the ownership of the debt, including all assignments and endorsements." (ECF No. 44 at 3). However, plaintiff has provided no explanation as to how Portfolio's productions do not contain the complete set of documents. Furthermore, this is an action regarding defendants' individual conduct as to plaintiff, and not an action seeking enforcement of an order entered in another district court. Without an explanation as to why the documentation provided by defendant Portfolio fails to establish chain of title for the alleged debt, plaintiff's request for "the complete set of documents" tracing the ownership of the debt is denied.

As for plaintiff's request for the Purchase Agreement with Synchrony Bank in order to verify the representations made regarding the accuracy of the account information, plaintiff has not challenged this issue in his Complaint against Portfolio, nor has he demonstrated that the documents provided fail to accurately reflect the correct amount owed. Given the nature of the claims in the Complaint, the documents already produced, and plaintiff's failure to explain why the production is insufficient, the Court finds that any further production is not proportional to the needs of the case.

To the extent that plaintiff claims he needs additional documents to determine if the debt was "securitized" or if the document used to transfer the debt from Synchrony Bank to defendant Portfolio was "robo-signed," Portfolio argues that plaintiff fails to explain why these documents

are relevant to his claim, and are therefore not proportional to the needs of the case.  In any event, Portfolio does not "securitize debt" and is not in possession of any Synchrony Bank documents that might indicate if Synchrony Bank did or did not securitize the debt.  (ECF No. 43 at 2, 3, n.3).  Given that Portfolio is not in possession of any responsive documents as to whether the debt was "securitized" or "robo-signed," and that plaintiff has failed to explain why these issues are relevant to his claims, plaintiff's motion to compel is denied.

The final category is plaintiff's request for production of the Forward Flow Agreement ("FFA").  The FFA is an agreement entered into between Portfolio and the underlying creditor, when Portfolio purchases thousands or tens of thousands of debts at a time.  (Id. at 3).  The FFA contains various details regarding price, as well as representations and warranties.  (Id.) Portfolio contends that it and the sellers with whom it deals with maintain these FFAs and their terms as confidential and disclosure would harm Portfolio's and the sellers' competitive position in the market if disclosed.  (Id.)  Portfolio notes that plaintiff has requested this document to determine if the agreement contains representations by Synchrony regarding the accuracy of the "origination details and outstanding balance of the debt."  (Id.)  However, according to Portfolio, there is nothing in the FFA that could shed light on plaintiff's claim that the debt is not plaintiff's, nor does it contain any account-specific information related to the accuracy of the amount in the account.  (Id.)  Moreover, nowhere in the Complaint does plaintiff raise a challenge as to these issues:  his claim against Portfolio is that it provided false information in connection with plaintiff's credit report in violation of FCRA, and that defendants used false representations or deceptive means to collect a debt in violation of the FDCPA.  Although plaintiff has claimed that he was not responsible for the debt, the information in the FFA has no relevance to his claims and, particularly in light of the confidentiality concerns raised by

defendant, producing this document is not proportional to the needs of case.  Thus, plaintiff's motion to compel is denied.

   III. <u>Plaintiff's Motion Asking the Court to Recognize the CFPB as an Interested Party</u>

   On May 8, 2025, plaintiff filed a letter motion moving the Court to recognize the Consumer Financial Protection Bureau as an interested party pursuant to Federal Rule of Civil Procedure 24(b)(2).  (<u>See</u> ECF No. 54).  Plaintiff argues that the CFPB should be made a party in this action because it previously brought suit against defendant Portfolio, is in active litigation against defendant Experian, is the primary federal agency charged with administering and enforcing the FCRA and FDCPA, and that its presence as an interested party or amicus would aid the court in evaluating systemic practices at issue.  (<u>Id.</u> at 2).

   Rule 24(b)(2) states that a "court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on . . . (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order."  Rule 24(b)(2) states that "in exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  <u>H.L. Hayden Co. of New York v. Siemens Med. Sys., Inc.</u>, 797 F.2d 85, 89 (2d Cir. 1986) (alterations adopted).  It does not appear from the docket that the CFPB has filed a motion to intervene under Rule 24(b)(2) or made any indication that they wish to participate in this proceeding.  Furthermore, it does not appear that the plaintiff is in any communication with the CFPB about this litigation.  Plaintiff's letter motion appears to cite the Rule (24)(b)(2) standard for permissive intervention to implead the CFPB.  Impleader, a right typically afforded a defending party, is instead governed by Federal Rule of Civil Procedure

14.  Finally, it does not appear that CFPB is a necessary party for a just adjudication of the action, and is not a required party under Federal Rule of Civil Procedure 19.

For the reasons above, plaintiff's letter motion to recognize the CFPB as an interested party is denied.  If plaintiff would like the CFPB to submit an amicus brief in this action, it must communicate with the agency directly.

IV. <u>Plaintiff's Motions Asking the Court to Take Judicial Notice</u>

Plaintiff's second motion filed on May 8, 2025, asks the Court to take judicial notice of an opinion and order issued in <u>Consumer Financial Protection Bureau v. Experian Information Solutions, Inc.</u>, Case No. 8:25 CV 24 (C.D. Cal. May 5, 2025).  (<u>See</u> ECF No. 55).  Plaintiff explains that the order is a denial of Experian's motion to dismiss a FCRA claim brought against it by the CFPB.  (<u>Id.</u>)  The CFPB's complaint alleges that Experian failed to conduct reasonable investigations of consumer disputes and failed to send notices of these disputes to furnishers of information.  (<u>Id.</u>)  Plaintiff argues that this decision "is directly relevant to the issues currently before the Court concerning the adequacy of Defendant's reinvestigation procedures and supports Plaintiff's contention that Defendant's practices . . . plausibly violate the FCRA."  (<u>Id.</u>)

Plaintiff filed another letter motion on July 22, 2025, which asks the Court to take judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, of the judgment and findings of the court in <u>Portfolio v. Mejia</u>, No. 1216-CV34184 (Circuit Ct. Jackson Cty Mo.).  (<u>See</u> ECF No. 58).  Plaintiff notes that the judge in that case ordered Portfolio to pay the jury verdict of around $83 million in punitive damages based on its business practices.  Plaintiff contends that Portfolio's practices have harmed him and "need[] to change."  (<u>Id.</u>)

Since there is no evidentiary issue before the Court at this time and the Court considers all relevant legal authority in any event when issuing its decisions, the Court denies plaintiff's letter requests to take judicial notice of these decisions without prejudice.

CONCLUSION

Accordingly, the Court respectfully recommends (1) that plaintiff's motion for Rule 11 sanctions be denied. Furthermore, the Court orders that (2) plaintiff's motion to compel is denied, (3) plaintiff's motion to recognize the CFPB as an interested party in this litigation is denied, and (4) plaintiff's motions to take judicial notice are denied without prejudice.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the district court's order. See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Defendant Portfolio and Emperian are Ordered to promptly serve a copy of this Report and Recommendation on plaintiff, then file proof of service on the docket no later than **September 9, 2025**. The Clerk is directed to send copies of this Report and Recommendation to all other parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       September 5, 2025

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York